[S. F. No. 17304. In Bank. Dec. 18, 1947.]

CALIFORNIA EMPLOYMENT STABILIZATION COMMISSION, Appellant, v. WILLIAM E. PAYNE, Respondent.

Robert W. Kenny, Fred N. Howser, Attorneys General, Clarence A. Linn, Assistant Attorney General, Doris H. Maier and Chas. W. Johnson, Deputy Attorneys General, for Appellant.

Fabian D. Brown for Respondent.

GIBSON, C. J.—In January, 1944, plaintiff commission sued defendant for unemployment contributions claimed to be due for the year 1937 and part of the year 1938. The trial court concluded that the action was barred by subdivision 1 of section 338 of the Code of Civil Procedure, and that, for certain reasons which need not be noted here, the plaintiff was estopped from collecting the tax. Judgment was accordingly rendered for defendant, and the commission has appealed from this judgment.

Defendant, who owned and operated a beauty shop, paid no contributions under the Unemployment Insurance Act [Stats. 1935, p. 1226, as amended; 3 Deering's Gen. Laws, Act 8780d] during the period in question because he believed that he had one less than the number of employees necessary

to bring him within the provisions of the act. This suit arises out of the determination by the commission that a janitor who worked for defendant was an employee rather than an independent contractor, and that, therefore, defendant was subject to the act. The correctness of this determination is not disputed, but it is stipulated that, in failing to file contribution reports on the janitor, defendant did not act in bad faith or with intent to evade the act.

This suit was commenced more than three years after the right of action accrued and is barred by subdivision (1) of section 338 of the Code of Civil Procedure, unless the limitation in that section is rendered inapplicable by section 45.2 of the Unemployment Insurance Act.

As originally enacted in 1935, the Unemployment Insurance Act contained no provisions relating to limitations, but in 1939, section 45.2 was added to provide that "no statute of this state shall limit the time within which the commission may enforce the payment of contributions . . . if with respect to such contributions no return has been filed." It has been held that liabilities under the act accruing more than three years prior to the enactment of section 45.2 were not affected by its passage and, accordingly, were barred. (*California Emp. etc. Com.* v. *Smileage Co.*, 68 Cal.App.2d 249 [156 P.2d 454].)

In 1943, approximately six months before this action was commenced, section 45.2 was amended to provide that "no statute of this state shall limit the time within which the commission may enforce the payment of contributions . . . if *by reason of any intent to evade the provisions of this act* no contribution report or an erroneous return has been filed." (Italics added.) It was further provided that "the amendment . . . to section 45.2 . . . is hereby declared to be merely a clarification of the original intention of the legislature rather than a substantive change and such section shall be construed for all purposes as though it had always read as hereinbefore set forth." (Stats. 1943, ch. 1114, § 4.)

This series of legislative enactments presents two basic questions: (1) what did the Legislature intend by the amendment and the "clarification" provision in 1943 and (2) are there any constitutional objections to giving effect to the legislative intent?

The construction of statutes is a function of the judiciary, but where a statute is ambiguous various aids may be employed in determining the legislative intent, and a

subsequent expression of the Legislature as to the intent of the prior statute, although not binding on the court, may properly be used in determining the effect of a prior act. (*Board of Soc. Welfare* v. *County of Los Angeles,* 27 Cal.2d 90, 97 [162 P.2d 635] ; *Stockton Sav. & Loan Bank* v. *Massenet,* 18 Cal.2d 200, 204 [114 P.2d 592] ; 2 Sutherland, Statutory Construction [3d ed. 1943], pp. 316, 526.) ▮ In the instant case, however, section 45.2 was not ambiguous as to the matter of intent to evade the act. Under the section as enacted in 1939, the running of the statute of limitations against the state was suspended, if no return was filed, whether or not the employer had an intent to evade the act. The amendment to section 45.2 in 1943 added the further condition that an intent to evade the act be shown before the running of the statute of limitations should be suspended, and the declaration of the Legislature that the amendment in 1943 was merely a clarification of the original statute, may not be invoked to change the clear meaning of section 45.2 as first enacted. The situation is similar to that presented by a statute containing a broad constitutional severability clause, to the effect that, if any part of the statute is held unconstitutional, the Legislature intended the remainder to stand. Such a clause, despite its positive terms, does not deprive the judiciary of its normal power and duty to construe the statute to determine whether the unconstitutional part so materially affects the balance as to render the entire enactment void. If the court reaches the latter conclusion, it will annul the statute as a whole. (See *Robert* v. *Police Court,* 148 Cal. 131 [82 P. 838] ; *Bacon Service Corp* v. *Huss,* 199 Cal. 21 [248 P. 235].) Similarly, the language of the ''clarification'' provision in this case cannot be given an obviously absurd effect, and the court cannot accept the Legislative statement that an unmistakable change in the statute is nothing more than a clarification and restatement of its original terms.

It does not follow, however, that the ''clarification'' provision enacted at the same time as the 1943 amendment is ineffective for any purpose. It is obvious that such a provision is indicative of a legislative intent that the amendment apply to all existing causes of action from the date of its enactment. In accordance with the general rules of statutory construction, we must give effect to this intention unless there is some constitutional objection thereto.

█ Where a statute operates immediately to cut off an existing remedy and by retroactive application deprives a person of a vested right, it is ordinarily invalid because it conflicts with the due process clauses of the federal and state constitutions. (*Wells Fargo & Co.* v. *City etc. of San Francisco,* 25 Cal.2d 37 [152 P.2d 625] ; see *Rosefield Packing Co.* v. *Superior Court,* 4 Cal.2d 120, 122 [47 P.2d 716].) █ Accordingly, the power of the Legislature to lessen a statute of limitations is subject to the restriction that an existing right cannot be cut off summarily without giving a reasonable time after the act becomes effective to exercise such right. (See *Davis & McMillan* v. *Industrial Acc. Com.,* 198 Cal. 631, 637 [246 P. 1046, 46 A.L.R. 1095].) █ This principle, however, does not apply where the state gives up a right previously possessed by it or by one of its agencies. Except where such an agency is given powers by the Constitution, it derives its authority from the Legislature, which may add to or take away from those powers, and therefore, a statute which adversely affects *only* the right of the state is not invalid merely because it operates to cut off an existing remedy of an agency of the state. The case of *Superior Oil Co.* v. *Superior Court,* 6 Cal.2d 113 [56 P.2d 950], is distinguishable since the court was there concerned with the operation of a statute which applied to private persons as well as the state. █ This distinction was not noted in *California Emp. Stab. Com.* v. *Chichester etc. Co.,* 75 Cal.App.2d 899 [172 P.2d 100], which relied on the Superior Oil case and assumed without discussion that the same rule would apply where the state alone would be adversely affected. It was held in the Chichester case that the amendment of section 45.2 in 1943 could not operate to deprive the commission of the right to sue on existing causes of action until a reasonable time had passed after the statute became effective. The commission was created by, and derives its powers from, the Legislature, and it does not have rights which are superior to the legislative will. By the enactment in 1939 of section 45.2, the three-year limitation contained in section 338 was rendered inapplicable, and the commission was given the right without limit as to time to enforce contributions where no return had been filed. Thereafter in 1943, the Legislature determined that it was unwise and perhaps unfair to allow the commission an unlimited time within which to enforce contributions where there was no intent to evade the act, and

as to those cases, the three-year limitation was restored and the right of action was cut off if the period had run. This the Legislature had the power to do insofar as the constitutional requirement of due process is concerned, and the holding to the contrary in the Chichester case, 75 Cal.App.2d 899 [172 P.2d 100], is disapproved.

The question remains whether the retroactive application of the amended statute would conflict with the constitutional prohibition against gifts of public money or property to private persons. (Cal. Const., art. IV, §§ 22, 31.) It has been held that a retroactive amendment to the inheritance tax laws releasing the tax liability of an estate was within the constitutional inhibition. (*Estate of Stanford*, 126 Cal. 112 [54 P. 259, 58 P. 462, 45 L.R.A. 788] ; *Trippet* v. *State*, 149 Cal. 521 [86 P. 1084, 8 L.R.A.N.S. 1210] *Estate of Potter*, 188 Cal. 55 [204 P. 826] ; *Estate of Lander*, 6 Cal.App. 744 [93 P. 202].)

It is well settled, however, that expenditures of public funds or property which involve a benefit to private persons are not gifts within the meaning of sections 22 and 31 of article IV of the Constitution if those funds are expended for a public purpose, which is a matter primarily for legislative discretion. (*County of Alameda* v. *Janssen*, 16 Cal.2d 276, 281 [106 P.2d 11, 130 A.L.R. 1141].) It would appear that any incidental benefit to the employer in applying this section to existing causes of action so as to cut off the commission's right to sue for the contributions where no intent to evade the act is present, may well be outweighed by the public benefit which would result if enforcement officers spent their time on fresh claims rather than stale ones. An additional element of public benefit is present where, as here, the statutory scheme is not purely a revenue measure but is enacted as part of a broad social program involving continuing contributions and benefits. Whether the employer would be able to pay a large assessment, based upon many years of innocent delinquencies, becomes important. It is possible that an employer who has not made collections from his employees or set aside a fund for the payment of the assessments, would be rendered insolvent or bankrupt if compelled to pay the amount of the accumulated assessments, plus interest and penalties. Under such circumstances, the result would be to force the employer out of business, thereby depriving his employees of work and,

to that extent, defeating the primary object of the legislation which is to protect employees against unemployment. It may well be that the Legislature considered the collection of a stale claim for delinquent contributions an additional hazard and therefore undesirable to the adequate functioning of the system. Accordingly, the benefits to be derived from the restoration of the three-year period within which to sue on claims based on errors made in good faith and without intent to evade the act may serve a valid public purpose in limiting the expenditures of time and money in the effort to enforce stale claims which may have little or no value and might increase the economic hazards which the statutory scheme was designed to lessen.

We conclude, therefore, that the trial court properly applied subdivision (1) of section 338 of the Code of Civil Procedure to this cause of action. This conclusion makes it unnecessary to determine the other questions raised by the appeal.

The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied January 15, 1948.