Filed 6/15/22  Tedesco v. White CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THOMAS TEDESCO et al.,<br><br>  Plaintiffs and Appellants,<br><br>    v.<br><br>LAURA K. WHITE, as Cotrustee, etc., et al.,<br><br>  Defendants and Respondents. | G059883<br><br>(Super. Ct. No.  30-2019-01078628)<br><br>O P I N I O N |

Appeal from a judgment and orders of the Superior Court of Orange County, Aaron W. Heisler, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Appeal dismissed in part and judgment affirmed.

Herzog, Yuhas, Ehrlich & Ardell, Ian Herzog and Evan D. Marshall, for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton, Adam E. Streisand, Nicholas J. Van Brunt and Valerie E. Alter for Defendants and Respondents.

\*          \*          \*

This is a factually complicated case, but despite appellants' hyperbolic briefing, not a difficult one. Thomas S. Tedesco, by his alleged guardian ad litem Stephen Carpenter, and trust beneficiary, Debra Wear, represented by Ian Herzog and Evan D. Marshall of Herzog, Yuhas, Erlich & Ardell (the Herzog firm), appeal from the judgment dismissing a trust petition, order denying motion for new trial, and an order denying Wear's motion for leave to file amended petition.

Respondents Laura K. White, Julie M. Bas, and Sandra L. Kay, who are Tedesco's daughters as well as the cotrustees of the Thomas S. Tedesco Living Trust (the Tedesco Trust), have moved to dismiss the appeal because the Riverside Superior Court, which established a conservatorship over Tedesco's estate (the conservatorship proceeding), previously ruled that all legal services agreements between the Herzog firm and Tedesco were void and that only David Wilson, in his capacity as the duly appointed conservator of Tedesco's estate, could initiate civil litigation on Tedesco's behalf. The court also instructed Wilson to intervene in a Riverside Superior Court civil case that had been filed on Tedesco's behalf by Carpenter as guardian ad litem, for the purpose of dismissing it. The Herzog firm appealed the Riverside Superior Court orders. Our colleagues in the Second Division of the Fourth District Court of Appeal affirmed the orders. (*Conservatorship of the Estate of Thomas S. Tedesco* (Sept. 19, 2019, E070316) [nonpub. opn.] (*Conservatorship of Tedesco*).)

Those orders should preclude Carpenter's and the Herzog firm's pursuit of the petition, and of this appeal, on Tedesco's behalf. However, as appellants point out in their opposition to the motion to dismiss, the very issues raised in this appeal are whether those orders are valid and whether they effectively preclude the Orange County Superior Court from appointing a guardian ad litem in a trust case pending before it.

The Herzog firm's brief in opposition to the pending motion to dismiss is similar to its opening brief on the merits—although the brief includes a demand that this court "report" three justices from Division Two to the appropriate judicial authority for

2

what appellants characterize as a pattern of willful and "disgraceful" misconduct, including "[p]ervasive falsification of the record."[1] We do not confuse aggressive argument with persuasive advocacy, and thus reject this argument. That being said, appellants are correct in pointing out that the merits of the motion to dismiss are the same as the merits of the appeal. We consequently deny respondents' motion to dismiss the appeal.

On the merits, however, appellant's arguments fail. They assert that the conservatorship proceeding is void and that, even if it were valid, the trial court erred by interpreting the Riverside Superior Court orders as a restriction on its ability to appoint a guardian ad litem in the trust proceeding in the Orange County Superior Court with that argument. We disagree.

In arguing the conservatorship is void, appellants fail to acknowledge there are significant constraints on a court's ability to declare a prior judgment or order to be void. A judgment is void (as opposed to voidable) only when the court issuing it lacked fundamental jurisdiction over the parties or subject matter. It is only when that lack of jurisdiction can be established in the judgment roll, or the judgment has been directly challenged in another equitable proceeding, that a court can adjudicate a judgment to be void in a separate case. Neither of those circumstances has been established here. Consequently, we find no error in the trial court's application of *Conservatorship of Tedesco* and the companion case *Tedesco v. White*[2] in this proceeding.

---

[1] The Herzog firm purports to support this potentially contemptuous assertion by relying on a selected group of documents that attorney Marshall claims to "verify," albeit with no showing he is qualified to do so. Moreover, in asserting the appellate court has "lied," the Herzog firm ignores all standards of appellate review, including the substantial evidence test.

[2] (*Tedesco v. White* (Sept. 19, 2019, E069428) [nonpub. opn.].)

3

We also reject the assertion that the Riverside Superior Court's orders cannot restrict the power of the Orange County Superior Court to appoint a guardian ad litem in a proceeding before it. Not only is the contention barred by collateral estoppel, it is also erroneous. Contrary to appellants' assertion, an order restricting who can represent Tedesco in litigation is not an exercise of jurisdiction over the trust. Such an order adjudicates who can act on Tedesco's behalf in initiating and maintaining litigation. That is an inextricable aspect of a conservatorship over the estate of an incapacitated person. If another court were permitted to appoint someone other than Wilson to act on Tedesco's behalf and to bring litigation Wilson declined to pursue, that would directly undermine Wilson's authority as conservator. Because Tedesco has an appointed conservator to protect his interests, it is that conservator's responsibility to decide what legal claims are to be pursued.

Appellants also appeal the January 20, 2021 order denying Tedesco's stepdaughter, Debra Wear, leave to file an amended petition to substitute herself as the petitioner in this case (the Wear Order). As noted above, the cotrustees and Wilson have moved to dismiss this appeal. They argue that Wear is not aggrieved by the denial of her application because the court did not preclude her from filing a petition on her own behalf, if appropriate.

We agree the appeal as to the Wear Order should be dismissed. *Conservatorship of Tedesco* prevents Wear from claiming to represent Tedesco's interests in this case, and the court's denial of her motion did not affect whatever right she may have to bring a petition on her own behalf. The appeal as to the Wear Order is therefore dismissed.

**FACTS**

Thomas Tedesco, the putative petitioner and appellant, is an elderly man who is the subject of a permanent conservatorship of his estate. The initial petition to

4

establish the conservatorship was filed by Tedesco's daughter, Laura White, due to concerns he had suffered mental deterioration following medical procedures and was subject to undue influence. Following a trial, the Riverside Superior Court appointed a temporary conservator. However, apparently due to concerns that the person appointed as temporary conservator would be appointed as the permanent conservator, Tedesco filed his own petition seeking the appointment of David Wilson as his permanent conservator. Shortly thereafter, the parties stipulated to the appointment of Wilson as Tedesco's permanent conservator.

By virtue of that conservatorship, Tedesco lacks the legal capacity to conduct his own financial and business affairs, and he cannot enter into contracts on his own behalf. (Civ. Code, § 40; Prob. Code, § 1872, subd. (a).) As Tedesco's duly appointed conservator, it is Wilson's responsibility and obligation to act on Tedesco's behalf in such matters. (*Conservatorship of Tedesco, supra,* E070316.)

As a conservatee, Tedesco is entitled to be represented by an independent counsel in matters relating to the conservatorship. (Prob. Code, § 1471, subd. (a).)[3] The probate court has appointed a series of independent counsel to act for Tedesco in connection with the conservatorship. Attorney Russell L. Davis filed multiple requests to be appointed as Tedesco's independent counsel; the probate court denied each one. In December 2017, the court appointed Kevin McKenzie to act as independent counsel for Tedesco in the conservatorship. As appellants acknowledge, McKenzie has since been

---

[3]     Specifically, the conservatee is entitled to be represented by independent counsel in connection with "(1) A proceeding to establish or transfer a conservatorship or to appoint a proposed conservator. [¶] (2) A proceeding to terminate the conservatorship. [¶] (3) A proceeding to remove the conservator. [¶] (4) A proceeding for a court order affecting the legal capacity of the conservatee. [¶] (5) A proceeding to obtain an order authorizing removal of a temporary conservatee from the temporary conservatee's place of residence." (Prob. Code, § 1471, subd. (a).)

5

relieved as Tedesco's independent counsel in the conservatorship proceeding.[4]  He is not involved in this appeal.

Despite the existence of Tedesco's conservatorship, Davis previously sought to initiate litigation on behalf of Tedesco, and Carpenter sought to be appointed his guardian ad litem in Riverside, without notifying Wilson.

In April 2018, the Riverside Superior Court issued orders affirming Wilson's termination of earlier retainer agreements between Tedesco and the Herzog firm, and between Tedesco and Davis.  The court instructed Wilson to intervene in and move to dismiss a civil suit brought on Tedesco's behalf in the Riverside Superior Court, in which Carpenter had been appointed to act as Tedesco's guardian ad litem. The probate court also ruled that any future litigation on behalf of Tedesco "shall be initiated exclusively by the Conservator [Wilson] or Court Appointed Counsel, Kevin McKenzie." (*Conservatorship of Tedesco, supra,* E070316.)

Those orders were affirmed on appeal in *Conservatorship of Tedesco*.  The appellate opinion also concluded that Tedesco "lacks the legal ability to retain or direct counsel," and that appointed counsel McKenzie had no authority to retain or associate with nonappointed counsel to pursue a civil action on Tedesco's behalf. (*Conservatorship of Tedesco, supra,* E070316.)  The Riverside Superior Court reached similar conclusions when it dismissed a related civil case brought on Tedesco's behalf by the Herzog firm; that judgment was also affirmed on appeal in *Tedesco v. White*. (*Tedesco v. White, supra,* E069428.)

While the appeals of the orders in *Conservatorship of Tedesco* and the judgment in *Tedesco v. White* were pending, the instant petition was filed on Tedesco's

---

[4]  Appellants do not specify the date McKenzie was relieved as Tedesco's independent counsel in the conservatorship, but we note the record in this case reflects that by July 2020—a month before the trial court made its ruling—he was no longer listed as one of Tedesco's counsel in connection with the petition.

6

behalf in the Orange County Superior Court, seeking to remove Tedesco's daughters as the cotrustees of the Tedesco Trust, and challenging the validity of the third amendment to that trust. Counsel listed on the petition are the Herzog firm, Davis (who signed the petition), and McKenzie. The petition names Carpenter as plaintiff, in his capacity as Tedesco's guardian ad litem.

In February 2020, after the Riverside Superior Court's orders were affirmed on appeal, the cotrustees demurred to the petition, arguing Tedesco lacked capacity to file it, the attorneys representing him were not authorized to pursue it, and the Riverside probate court, which had exclusive jurisdiction over the appointment of fiduciaries to represent Tedesco, had not appointed a guardian ad litem to act on Tedesco's behalf in filing it. Meanwhile, back in Orange County Superior Court, Carpenter and counsel opposed the demurrer, arguing in part that the Riverside conservatorship proceeding was void based on various perceived errors. The trial court rejected the effort to collaterally attack the conservatorship rulings. Instead, the court concluded it was bound by collateral estoppel to apply the rulings in *Conservatorship of Tedesco, supra,* E070316, and *Tedesco v. White, supra*, E069428, which precluded it from appointing a guardian ad litem to represent Tedesco in bringing the petition.

The trial court consequently sustained the cotrustees' demurrer with leave to amend to allege either that Tedesco's conservatorship had been terminated or that the conservator or another person authorized by the Riverside probate court to act on Tedesco's behalf had filed an amended petition. No amendment was filed.

The trial court scheduled an order to show cause re dismissal of the petition for November 18, 2020. On November 16, after the court's leave to amend expired, and two days before the scheduled dismissal, Wear[5] filed an ex parte application for leave to

---

[5] As noted in *Conservatorship of Tedesco*, *supra*, E070316, Wear is not only Tedesco's stepdaughter, but also a paralegal for attorney Davis.

7

substitute herself as the petitioner in the case. The cotrustees opposed the ex parte application, arguing that Wear was not authorized to pursue Tedesco's claims on his behalf, and arguing she lacked standing to pursue the petition in her own right. The trial court denied the application, concluding there was no statutory justification for granting ex parte relief.

On November 24, 2020, the trial court ordered the petition dismissed. In its order, the court acknowledged Wear's effort to substitute herself into the case and noted that her effort did not comport with the limited leave to amend the court had allowed when sustaining the cotrustees' demurrer. The trial court also stated it was making no rulings "as to whether any person with standing to do so might file his/her/their own petition seeking relief identical or similar to the relief sought in the Petition."

## DISCUSSION

1. *Validity of the Judgment in Conservatorship of Tedesco*

Appellants contend the conservatorship established over Tedesco in August 2015 is void because (1) it is "based on a 'stipulation prior to trial' which . . . never existed"; (2) "Judge Cox [the judge presiding when the conservatorship was established] was disqualified . . . for bias extant at the time he made the August 2015 order," which "deprived his orders of legal effect"; (3) "Tedesco demanded a jury trial in July 2015 [i.e., a month before the conservatorship was established by stipulation], and no admonition or waiver of that right existed"; and (4) "Tedesco was not given advisements required by *Probate Code* §§ 1827 and 1828 at the time the conservatorship was supposedly created." Counsel also argues that "Tedesco was repeatedly denied [a] timely hearing on [the] validity of the conservatorship or orders—even after the Court of Appeal acknowledged the right to hearing and review in May 2019, and despite the duty *sua sponte* to vacate void orders." We reject each of these arguments.

8

A final judgment is presumed valid and enforceable. As our Supreme Court explained in *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660 (*American Contractors Indemnity*), a judgment is "void" only when the court lacks fundamental jurisdiction over the subject matter or the parties, i.e., "'an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.'"

The Supreme Court added that the phrase "'lack of jurisdiction'" can "also 'be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.'" (*American Contractors Indemnity, supra,* 33 Cal.4th at p. 661.) And "'"[w]hen . . . the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction."'" (*Ibid.*)

In cases where "a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable. [Citations.] That is, its act or judgment is valid until it is set aside, and a party may be precluded from setting it aside by 'principles of estoppel, disfavor of collateral attack or res judicata.' [Citation.] Errors which are merely in excess of jurisdiction should be challenged directly, for example by motion to vacate the judgment, or on appeal, and are generally not subject to collateral attack once the judgment is final unless 'unusual circumstances were present which prevented an earlier and more appropriate attack.'" (*American Contractors Indemnity, supra,* 33 Cal.4th at p. 661.)

In this case, Appellants fail to explain why the alleged errors they highlight would render Tedesco's conservatorship void, as opposed to voidable. But even if we were to assume that one or more of the issues they raise created a fundamentally void conservatorship judgment, we would still be constrained by the rule that in determining whether a judgment is void, "'[e]very presumption is in favor of the validity of the

9

judgment, and any condition of facts consistent with its validity [and not affirmatively contradicted by the judgment roll] will be presumed to have existed rather than one which will defeat it.'" (*Wells Fargo & Co. v. City & County of San Francisco* (1944) 25 Cal.2d 37, 40 (*Wells Fargo*).)

"In the absence of extrinsic fraud or mistake" a judgment "cannot be set aside [in a collateral proceeding] unless it is *void on its face*." (*Wells Fargo, supra*, 25 Cal.2d at p. 40, italics added; *OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1327 (*OC Interior Services*) ["A judgment that is void on the face of the record is subject to either direct or collateral attack at any time"] *County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1228.)

"'A judgment or order is said to be void on its face when the invalidity is apparent upon an inspection of the judgment-roll.'" (*Dill v. Berquist Construction Co*. (1994) 24 Cal.App.4th 1426, 1441; *OC Interior Services, supra,* 7 Cal.App.5th at p. 1327 ["To prove that the judgment is void, the party challenging the judgment is limited to the judgment roll, i.e., no extrinsic evidence is allowed"].)

The "judgment roll" is statutorily defined as consisting of a very limited set of documents.  It includes "the pleadings, all orders striking out any pleading in whole or in part, a copy of the verdict of the jury, the statement of decision of the court, or finding of the referee, and a copy of any order made on demurrer, or relating to a change of parties, and a copy of the judgment." (Code Civ. Proc., § 670, subd. (b).)  In cases involving a default, the judgment roll will also include the summons and documents evidencing service of process.  (*Ibid.*)

A judgment is invalid "on its face" only when the invalidity can be established based on those few documents.  None of the alleged errors identified by appellants in the conservatorship case satisfy that standard.

Their first assertion, that the stipulation relied upon by the Riverside Superior Court to establish the conservatorship "never existed," reflects reliance on

extrinsic evidence to contradict the content of the court record; such reliance is prohibited in establishing facial invalidity. Appellants fail to demonstrate that their assertions about the judge being "disqualified," about Tedesco demanding and never waiving a jury trial, and about his not being given required advisements, are established by an inspection of the judgment roll. Consequently, Appellants have failed to establish the fact that the conservatorship is void.

A judgment that is valid on its face can only be attacked on appeal or by a motion to vacate in the original case,[6] or in a separate equitable proceeding brought for that purpose. (*OC Interior Services, supra,* 7 Cal.App.5th at p. 1328 ["a judgment that is valid on the face of the record must be challenged by direct attack, such as a motion in the original action, an appeal in the original action, or an independent equitable action"].) As explained in *Bloniarz v. Roloson* (1969) 70 Cal.2d 143, 146, "[a] court of general jurisdiction has inherent equity power, aside from statutory authorization, to vacate and set aside default judgments obtained through extrinsic fraud or mistake," and "[t]his power may be invoked by motion or by an independent action in equity" (*ibid*; *Olivera v. Grace* (1942) 19 Cal.2d 570, 575 ["One who has been prevented by extrinsic factors from presenting his case to the court may bring an independent action in equity to secure relief from the judgment entered against him"]).[7]

---

[6]　As previously noted, an appeal or a motion to vacate a judgment are the appropriate procedures for addressing errors that render a judgment voidable, but not void—i.e., in cases where the court, although vested with fundamental jurisdiction over the parties and subject matter, is said to have acted "in excess of its jurisdiction." The failure to pursue those remedies generally results in a waiver of such errors. (*American Contractors Indemnity, supra*, 33 Cal.4th at p. 661.)

[7]　"Fraud is extrinsic where the defrauded party was deprived of the opportunity to present his or her claim or defense to the court, that is, where he or she was kept in ignorance or in some other manner, other than from his or her own conduct, fraudulently prevented from fully participating in the proceeding." (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1068.) And fraud is labeled intrinsic and not a

There is no evidence in our record that a separate equitable proceeding has been initiated to establish the conservatorship proceeding is void, or that any such effort was successful. As a result, the conservatorship judgment and the orders issued therein are valid and binding for purposes of this case.

2.    *Collateral Estoppel*

The orders affirmed in *Conservatorship of Tedesco, supra,* E070316, and *Tedesco v. White, supra,* E069428, are entitled to collateral estoppel effect in this case.

"Issue preclusion by collateral estoppel 'prevents "relitigation of issues argued and decided in prior proceedings." [Citation.]' [Citations.] The doctrine 'rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent. Public policy and the interest of litigants alike require that there be an end to litigation.'" (*Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82, 89-90 (*Rodgers*).)

Collateral estoppel applies "'"if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding]."'" (*People v. Carter* (2005) 36 Cal.4th 1215, 1240.)

In this case, appellants do not challenge application of the doctrine of collateral estoppel in the abstract, nor do they contend its essential elements have not been established. Instead, they argue it should not be applied here for reasons of policy,

_____

ground for relief "if a party has been given notice of the action and has not been prevented from participating therein, that is, if he or she had the opportunity to present his or her case and to protect himself or herself from any mistake or fraud of his or her adversary, but unreasonably neglected to do so." (*Id*., at p. 1069.)

12

due process, and jurisdiction. They suggest that even if the conservatorship proceeding is neither void nor invalid, it is nonetheless "dubious." But final judgments, like marriages, are not subject to incremental validity. If a judgment is valid, it is entitled to deference.

Appellants argue, for various reasons, that the analysis employed in *Conservatorship of Tedesco, supra,* E070316, is flawed, the conclusions it reaches are erroneous, and thus it should not be followed.[8] We do not agree, since even a legally flawed judgment is entitled to collateral estoppel effect. (*Panos v. Great Western Packing Co.* (1942) 21 Cal.2d 636, 640 ["An erroneous judgment is as conclusive as a correct one"]; see *Weil v. Barthel* (1955) 45 Cal.2d. 835, 839 ["Since it appears that in the prior action the trial court had jurisdiction of the subject matter and of the parties thereto, and the judgment in such action has become final, it may not now be attacked by plaintiff on the ground that it was incorrect"].)

The application of collateral estoppel is not predicated on whether the first court's ruling was correct; it is predicated on the fact the parties had a full and fair opportunity to litigate the issue in that first proceeding. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009 [litigants are "entitled to a fair trial but not a perfect one"].)

Based on appellants' argument in their opening brief, we disagree that any delay of the motion to vacate the conservatorship amounted to misconduct. Appellants argue Tedesco filed a motion to vacate the conservatorship in February 2018; the motion was originally set for hearing in March 2018. The matter was then transferred to a different courtroom and, in July 2018, Tedesco's daughters successfully moved to stay the conservatorship proceedings, so the motion to vacate was never ruled upon. Absent

---

[8]     In fact, appellants seem to believe that labeling the appellate court's conclusions to be "legally preposterous" and its facts to be "invent[ed]," and claiming the trial court's ruling is an "absurdity," will assist us in evaluating whether those rulings are unsupported by relevant facts and precedent. They are wrong. We seldom find such hyperbolic arguments helpful.

from that rendition of events is any description of misconduct. [9] Appellants also argue that, in January 2019, Tedesco filed a motion to lift the stay for purposes of hearing his motion to vacate the conservatorship, but the motion was denied a month later. Again, appellants do not suggest the denial was legally incorrect or involved an abuse of the court's discretion. They further assert that in August 2019—i.e., a month after the appellate court's opinion in *Conservatorship of Tedesco, supra,* E070316—they filed a petition for writ of mandate seeking an order either vacating the conservatorship due to the delay in hearing the motion to vacate or requiring the Riverside Superior Court to rule on the motion immediately. That petition was also denied. Nothing in those facts suggests misconduct. In any event, the conservatorship order is entitled to the presumption of validity since it was issued by a court which had jurisdiction over both the parties and the subject matter. [10]

---

[9] Appellants also suggest that the judge who issued the orders challenged in *Conservatorship of Tedesco, supra*, E070316, was disqualified at the time he issued those orders in March 2018, and that the stay prohibited them from having a hearing on that issue. The record does not support the assertion the judge was then disqualified. It demonstrates only that Carpenter filed a request to disqualify the judge in September 2018—i.e., six months after the orders were issued—and the judge responded with an untimely rejection of the request, which was deemed an acceptance. The judge consequently recused himself in October 2018. Nothing in that evidence supports the contention that the judge was disqualified when he issued the challenged orders.

[10] Although appellants assert the stipulation cited by the Riverside probate court in establishing the conservatorship did not exist, the allegations contained in their petition suggest Tedesco did agree to the conservatorship. Specifically, they allege that Tedesco "reluctantly agreed" to file his own petition for a permanent conservatorship in an effort to avoid the appointment of a conservator he did not want, and that when he allegedly changed his mind after filing that petition, it was his own attorneys who ignored him. They also acknowledge that Tedesco attended the hearing at which Wilson (who was Tedesco's choice for a permanent conservator) was appointed. While appellants attribute Tedesco's failure to object to that appointment to a hearing problem on his part, we are not persuaded of that by this record.

14

Appellants rely on *Rodgers, supra*, 136 Cal.App.4th at p. 92 for the proposition that "'"[c]ollateral estoppel may be applied only if due process requirements are satisfied."'" But *Rodgers* bears no factual similarity to this case and the language attributed to it is actually a quotation from a different case, which itself quotes a third case; we are not persuaded that any of those opinions support the argument appellants are making here.

3.    *McKenzie's Participation as Cocounsel*

Appellants assert that because McKenzie, who had been appointed as Tedesco's independent counsel in the conservatorship, was included as one of the counsel on the petition, its filing was "authorized" by the orders affirmed in *Conservatorship of Tedesco*, *supra*, E070316. In making that argument, they point to a single sentence in the probate court's order: "Any future litigation initiated on behalf of the Conservatee Thomas S. Tedesco shall be initiated exclusively by the Conservator *or Court-Appointed Counsel Kevin McKenzie*." (*Ibid.,* italics added.) Appellants offer no analysis to support their apparent conclusion that this order gave McKenzie *unlimited* authority to initiate litigation on Tedesco's behalf. We reject that suggestion.

The conservator's authority to initiate litigation on the conservatee's behalf is derived from Probate Code section 2462, subdivision (a), which states the conservator may "[c]ommence and maintain actions for the benefit of the ward or conservatee or the estate." There is no similar provision for an appointed independent counsel. Instead, as we have already noted, the role of such counsel in a conservatorship is specific and limited; it is confined to representing the conservatee on issues arising within the conservatorship case. (See Prob. Code, § 1471, subd. (a); *Conservatorship of Bookasta* (1989) 216 Cal.App.3d 445, 447, fn. 2 ["conservatee is entitled to legal representation in matters pertaining to the conservatorship"].) An independent counsel appointed in a conservatorship does not occupy the role of the conservatee's unrestricted private counsel.

15

The appellate court in *Conservatorship of Tedesco* could not have been clearer when it said that "Wilson [the conservator] possesses the exclusive authority to take legal action on behalf of [Tedesco]" (*Conservatorship of Tedesco, supra,* E070316; see Prob. Code, § 2462, subd. (a)). The court rejected the claim that McKenzie had the authority to "approve and join in [a] civil action." (*Conservatorship of Tedesco, supra,* E070316.)

In any event, even if McKenzie's status as Tedesco's independent counsel had conferred on him authority to pursue whatever independent civil litigation he favored on Tedesco's behalf, it is undisputed that he no longer occupied that role in the conservatorship and that he had ceased participating as counsel in this case before the trial court sustained the cotrustees' demurrer. Once McKenzie ceased being Tedesco's independent counsel in the conservatorship, and he withdrew as one of Tedesco's counsel in this case, whatever authority he might have once possessed was terminated.

4. *Interference with the Exclusive Jurisdiction of the Orange County Superior Court*

Appellants suggest that this case cannot be governed by *Conservatorship of Tedesco, supra,* E070316, because if the rulings in that case are applied, it would impact the exclusive jurisdiction of the Orange County Superior Court to adjudicate the trust dispute and would thus impair the court's "duty" to hear the matter. They characterize the Riverside Superior Court's ruling as an "interference" with the jurisdiction of the Orange County court.

We do not dispute that the Orange County Superior Court may be the proper forum in which to file litigation over the Tedesco Trust (see Prob. Code, § 17005, subd. (a)(1), ["[t]he proper county for commencement of a proceeding . . . [¶] [involving a living trust is] the county where the principal place of administration of the trust is located.") But that statute establishes *venue*, not exclusive jurisdiction.

16

As explained in *The California Gun Rights Foundation v. Superior Court* (2020) 49 Cal.App.5th 777 (*California Gun Rights Foundation*), the various county superior courts enjoy what is effectively shared jurisdiction to hear and decide whatever cases are brought before them: "California's superior courts are courts of general jurisdiction, 'which means they are generally empowered to resolve the legal disputes that are brought to them.'" (*Id.* at p. 788.)

"In contrast to jurisdiction, venue 'is the place of trial—a particular county of the state,'" and "[a]s a general rule, the issue of venue . . . '"*is not jurisdictional in the fundamental sense*; and, both in civil and criminal cases, a change of venue from the superior court of one county to the same court in another county does not affect its jurisdiction over the subject matter of the cause."'"" (*California Gun Rights Foundation*, *supra*, 49 Cal.App.5th at p. 788; see *People v. Dawkins* (2018) 24 Cal.App.5th 698, 704 ["Venue '"establishes the proper place for trial,"' but it does not affect a trial court's personal or subject matter jurisdiction"].)

Thus, in *California Gun Rights Foundation*, the court concluded that Government Code section 6259, which specified that a petition challenging the government's refusal to produce public records was to be filed in "the superior court of the county where the records or some part thereof are situated" governed only the issue of venue. It did not address "jurisdiction, and thus it d[id] not deprive [the Los Angeles Superior Court] of subject matter jurisdiction over a public records dispute even if the requested records are not situated in the county. . . ." (*California Gun Rights Foundation, supra*, 49 Cal.App.5th at p. 783.) We agree with that analysis.

Probate Code section 17000, subdivision (a), which states that "[t]he superior court having jurisdiction over the trust pursuant to this part has exclusive jurisdiction of proceedings concerning the internal affairs of trusts," does not change our conclusion. As explained in *Capra v. Capra* (2020) 58 Cal.App.5th 1072, the term "exclusive jurisdiction" as used in the Probate Code "concerns assigning exclusive

17

responsibility over certain actions to the department of the superior court assigned to hear probate matters as against other departments *in that same county superior court*, such as the departments that hear civil matters. 'Exclusive jurisdiction' in the Probate Code does not distinguish between different county superior courts." (*Id.* at p. 1083; see also *Harnedy v. Whitty* (2003) 110 Cal.App.4th 1333, 1345 [explaining that Probate Code section 17000 was enacted "to make clear that the probate departments of the California superior courts could exercise the full and complete jurisdiction of a regular superior court when hearing and deciding a probate matter"].)

Based on those authorities, we conclude that the Orange County Superior Court does not have exclusive jurisdiction over the Tedesco Trust. Consequently, we reject the assertion that a ruling of the Riverside Superior Court which impacts litigation involving the Tedesco Trust would infringe on Orange County's jurisdiction.

In any event, even if we were to agree the Orange County Superior Court had exclusive jurisdiction to adjudicate disputes involving "the internal affairs" of the Tedesco Trust under Probate Code section 17000, that would not preclude the Riverside court from deciding the issue of who can represent Tedesco in litigation generally. As the respondent cotrustees point out, while that issue is an integral aspect of the conservatorship proceeding, it does not address the Tedesco Trust's internal affairs. (See *Harnedy v. Whitty, supra*, 110 Cal.App.4th at p. 1333, 1345 ["'Internal trust affairs, for example, include modification of the terms of the trust, changes in a designated successor trustee, other deviation from trust provisions, authority over the trustee's acts, or the administration of the trust's financial arrangements'"].)

We also reject the notion, impliedly asserted by appellants, that the Orange County Superior Court's application of collateral estoppel to determine whether to appoint a guardian ad litem represents an abdication of its obligation to decide that issue. When a court's ruling is based on collateral estoppel, that is an integral part of its ruling; it does not reflect a failure to rule.

18

5. *The Alleged Exclusion of the Tedesco Trust from the Conservatorship Estate*

Appellants also assert the Riverside probate court "eschewed any authority over the trust" and that Wilson (the conservator) "abandoned" Tedesco's rights in relation to the Tedesco Trust. They contend it would therefore be "legally preposterous" to allow a ruling of the Riverside Superior Court to "dictate whether Tedesco can be represented in actions concerning [the] trust . . . ."

Their argument is based on the conservator's petition for instructions filed in October 2015, stating that he is aware of a dispute among family members over the validity of the third amendment to the Tedesco Trust, but is uncertain as to its validity. He acknowledges that "[f]urther discovery is necessary to determine the precise circumstances behind the execution of these documents, and whether Mr. Tedesco possessed the requisite level of capacity to execute them." The conservator then suggests that because all of the interested parties have counsel, the court should require that they litigate the validity of the documents and that he be allowed to remain "neutral and focus on assisting Mr. Tedesco with managing his personal financial affairs." The court's ruling on the petition for instructions was that "[t]here having been no action presented to challenge the validity of the third trust amendment . . . [it] is valid."

None of that suggests that either the conservator or the court has "eschewed" or "abandoned" Tedesco's rights in connection with the validity of the third amendment of the Tedesco Trust. It reflects only that neither party was inclined, in 2015, to litigate a potential dispute that had not yet been presented to them, and that both parties would presume a trust amendment was valid until presented with evidence demonstrating otherwise. None of that suggests any abandonment of the issue.

19

6.    *Whether the Constraints of the Conservatorship Entitle Third Parties to Standing*

Finally, we reject appellants' assertion that the conservatorship "serves as a barrier to Tedesco's representation" in other litigation, and thus "injure[s]" the Herzog firm, Davis, and Carpenter, and entitles them to "standing" in this case.

The conservatorship *provides* Tedesco with representation, in the form of a duly appointed conservator who has a fiduciary obligation to act in Tedesco's best interest, and who is subject to probate court oversight to ensure he acts appropriately. To the extent the conservatorship erects a barrier to Tedesco's representation, it is a barrier designed to shield him from the undue influence of those whose interests do not align with his. It does not follow that either the Herzog firm, Carpenter, or Davis has suffered any cognizable injury as a consequence of the conservatorship.

7.    *Appeal as to the Wear Order Is Dismissed*

Appellants also argue the court erred by denying Wear's motion for leave to be substituted as petitioner in the case.

It is unclear whether the appeal as to the Wear Order seeks to vindicate Wear's own rights, or those of Tedesco. On the one hand, Wear argues the court erred because she had standing in her own right to pursue the petition due to her status as a contingent beneficiary of the Tedesco Trust. On the other hand, the brief asserts the court's denial of Wear's application was error because it failed to "protect Tedesco's right to a hearing."

The cotrustees have moved for dismissal of the appeal as to the Wear Order, arguing Wear is not aggrieved by the denial of her application because she has no standing to pursue Tedesco's rights, and because the court made clear its denial of her motion was without prejudice. We agree.

As stated in *In re The Clergy Cases I* (2010) 188 Cal.App.4th 1224, 1233, any person "'that has an interest in the subject matter of a judgment and whose interest is

20

adversely affected by the judgment is an aggrieved party and is entitled to be heard on appeal. However, the aggrieved party's interest must be immediate, pecuniary and substantial, and not merely a nominal or remote consequence of the judgment.'"'"

To the extent the appeal as to the Wear order seeks to protect Tedesco's right to a hearing, Wear has no standing to pursue the issue. She lacks an immediate pecuniary interest in whether Tedesco's rights are protected.

Appellants argue Wear has standing in her own right because even though she has since filed her own petition regarding the Tedesco Trust, alleging the same claims she sought to pursue by substituting into Tedesco's petition, the new petition is vulnerable to attack from the cotrustees in ways that her attempt to substitute into this case was not. Specifically, Wear asserts the cotrustees have "demurred to [her new petition] on standing and other grounds, and there is no telling what limitations or other defenses might be raised against Wear's petition while being inapplicable to Tedesco's 2019 petition."

Wear's assertion ignores the fact that the cotrustees objected to her ex parte application in this case based on standing and other issues. The ex parte process gave Wear no right to avoid those defenses, nor to avoid any other objections that the cotrustees may have interposed in response to her effort to take over Tedesco's petition. Dismissal of the appeal as to the Wear Order is therefore appropriate.

## DISPOSITION

The judgment dismissing the trust petition and order denying motion for new trial are affirmed. The appeal as to the order denying Wear's motion for leave to file

21

an amended petition is dismissed.  Respondents are to recover their costs on appeal from the Herzog firm, Carpenter, and Wear.


                                    GOETHALS, J.

WE CONCUR:


O'LEARY, P. J.


SANCHEZ, J.